## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PELEG DESIGN LTD.,

      Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

      Defendants.

Case No.: 23-24672-Civ-Gayles

## SECOND AMENDED COMPLAINT

Plaintiff PELEG DESIGN LTD. ("Plaintiff" or "Peleg Design"), by and through

undersigned counsel, hereby alleges as follows against the individuals, corporations, limited

liability companies, partnerships, and unincorporated associations and foreign entities identified

on Schedule A[1] (collectively, "Defendants"):

## INTRODUCTION

1.    This is an action for design patent infringement to combat e-commerce store

operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale,

selling and/or importing into the United States for subsequent sale or use, unauthorized and

unlicensed products that infringe Plaintiff's design patent, Patent No. US D929,796 S (the

"PELEG Patent"). The PELEG Patent is valid, subsisting, and in full force and effect. Plaintiff is

the owner and lawful assignee of all right, title, and interest in and to the PELEG Patent, which

---

[1] Because Plaintiff seeks to seal Schedule A and not the Second Amended Complaint, Plaintiff
intends to file Schedule A, containing the Seller name and URL for all five (5) Walmart
Defendants, under seal, upon the Court's entry of an Order granting leave to do so.  *See* Plaintiff's
Motion to Seal, forthcoming.

was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the PELEG Patent is attached as **Exhibit 1**.

2.      This is also an action that has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's registered copyrights, which are covered by U.S. Copyright Office Registrations No. VA 2-364-260 (the "PELEG Copyrights"). The registration is valid, subsisting, and in full force and effect. A true and correct copy of the federal copyright registration certificate for the PELEG Copyrights are attached as **Exhibit 2**

3.      Defendants are improperly advertising, marketing and/or selling unauthorized and noncompliant products that embody the design(s) depicted in the PELEG Patent or which bear images that are substantially similar to the PELEG Copyrights (the "Infringing Products").

4.      The Defendants have created numerous fully interactive commercial internet stores operating under the online marketplace accounts (the "Defendant Internet Stores") and using the account names identified in Schedule A.

5.      The Defendants design the online marketplace accounts to appear to be selling Plaintiff's genuine PELEG Products (the "PELEG Products"), while selling inferior imitations of such products.

6.      The Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. In fact, Defendants use many of the same images to advertise their inferior imitations of products that embody the design(s) depicted in the PELEG Patent.

7.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' infringement the PELEG Patent and PELEG Copyrights, as well as to protect unknowing consumers from purchasing Infringing Products.

8.      As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged from the loss of its exclusivity of its intellectual property rights, and, therefore, seeks injunctive and monetary relief.

9.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10.     In addition, each Defendant has offered to sell and ship and/or sold and shipped infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

11.     This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

12.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and FRCP § 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or

solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this judicial District, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in this Judicial District, through accounts with online marketplace platforms such as Walmart (the "Marketplace Platforms") as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts that each Defendant operates ("Defendant Internet Stores"), uses to communicate with Defendants regarding their listings for Infringing Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit and Infringing Products for delivery in the United States, including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

b.      Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial

District), for the sale and shipment of Infringing Products.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400 because Defendants have committed acts of design patent, and/or copyright infringement in this Judicial District and do substantial business in the Judicial District.

<u>**THE PLAINTIFF**</u>

14.     Plaintiff Peleg Design is a corporation incorporated under the laws of Israel and is the registered owner of the PELEG Patent referred to above, a copy of which is attached as Exhibit 1, and the PELEG Copyrights referred to above and with their federal registrations attached as Exhibit 2.

15.     Plaintiff is a leading supplier and manufacturer of unique kitchen, home and office gadgets and accessories, and has earned an international reputation for quality, reliability and value.  Plaintiff is credited for many breakthroughs that have occurred in the industry, including its PELEG Products.

<u>**THE PELEG PRODUCTS**</u>

16.     Plaintiff is the official source of PELEG Products in the United States, which include, among others, the following:



17.     Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the PELEG Patent (attached as Exhibit 1).

18.     The PELEG Products at issue in the instant action, embody at least a portion of the design depicted in the PELEG Patent.

19.     Plaintiff also owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the PELEG Products, including without limitation copyrights covered by the PELEG Copyrights.  Exemplary images from one of the PELEG Copyrights are as follows:







### THE DEFENDANTS

20.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

21.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

### THE DEFENDANTS' UNLAWFUL CONDUCT

22.     The success of the PELEG Products has resulted in significant counterfeiting.

23.     Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Walmart, including the Defendant Internet Stores, which were offering for sale, selling, and importing Infringing Products to consumers in this Judicial District and throughout the United States.

24.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion. Internet websites like the Defendant

Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

25.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine PELEG Products.

26.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

27.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

28.     Plaintiff has not licensed or authorized Defendants to use the PELEG Patent, or PELEG Copyrights, and none of the Defendants are authorized retailers of genuine PELEG Products.

29.     On personal knowledge and belief, Defendants deceive unknowing consumers by using the PELEG Patent and/or PELEG Copyrights without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the Infringing Products themselves.

30.     On personal knowledge and belief, Defendants use unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for

8

genuine PELEG DESIGN Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell infringing PELEG DESIGN Products into this District.

31.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

32.     For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

33.     And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.

34.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

35.     In addition, the Infringing Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. Again, Defendants use identical or substantially similar images to promote their Infringing Products.

36.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

37.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

38.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[3]

39.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

40.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

---

[2]     https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites").

[3] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm.

41.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

42.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the PELEG Patent and PELEG Copyrights in connection with the advertisement, distribution, offering for sale, sale and import of Infringing Products into the United States and Florida over the Internet.

43.     Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

44.     The presence of shared design elements and similar offerings on their online marketplace accounts establishes a clear logical relationship between Defendants, indicating that their actions are not isolated incidents but rather stem from a common source. This further reinforces the notion that Defendants are engaged in a concerted effort to profit from the unauthorized replication of designs covered by the PELEG Patent. This consistent utilization of imagery further bolsters the assertion that Defendants' illegal activities are interconnected and part of a cohesive scheme to unlawfully exploit Plaintiff's intellectual property rights.

## **JOINDER**

45.     This case involves Defendants who are all engaging in design patent infringement and copyright infringement by operating e-commerce stores that trade upon Plaintiff's reputation and goodwill.

46.     All five Defendants use the same online marketplace platform, Walmart, to sell unauthorized and unlicensed products that mimic those covered by the PELEG Patent and Copyrights.

*47.*     Similarly, Defendants employ the same identical image (illustrated below) to advertise their inferior imitation products, suggesting a common source of manufacture. These defendants design their online stores to appear as though they are selling genuine Peleg Products while in fact selling counterfeit versions.

*Exemplary Infringing Products Sold on Defendant Internet Store (DOE 2)*



*Exemplary Infringing Products Sold on Defendant Internet Store (DOE 3)*



*Exemplary Infringing Products Sold on Defendant Internet Store (DOE 4)*



13

*Exemplary Infringing Products Sold on Defendant Internet Store (DOE 5)*



48.     Their marketplace accounts share unique identifiers, such as the use of the same copyrighted images and similar descriptions of the counterfeit products, which suggest a logical relationship between them and indicate that their illegal activities stem from the same transaction, occurrence, or series of transactions or occurrences.

49.     Defendants conceal their identities and the full scope of their operations, relying on the vast reach of the Internet and international borders to continue their infringement. Defendants are collectively engaged in counterfeiting activities, operating under fictitious names and are all based in China.

50.     Because the claims against these Defendants arise from the same transaction, occurrence, or series of transactions or occurrences, warranting their inclusion in a single action, joinder is proper here.

### FIRST CAUSE OF ACTION
### DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)

51.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–50 of this Complaint.

52.     Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Infringing Products that infringe directly and/or indirectly the PELEG Patent.

53.     For example, below is a comparison of figures from Plaintiff's PELEG Patent and images of one of Defendants' Infringing Products sold on a Defendant Internet Store.

*Figures from the PELEG Patent*



*Exemplary Infringing Products Sold on Defendant Internet Store (DOE 5)*



54.    Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

55.    Defendants have infringed the PELEG Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

56.    Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

57.    Plaintiff is entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284, 289, including Defendants' profits.

## SECOND CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, et seq.)

58.    Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–50 of this Complaint.

59.    Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted work in copies, to prepare derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the PELEG Products, including without limitation copyrights covered by the PELEG Copyrights.

60.    Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the PELEG Copyrights without Plaintiff's permission.

61.    Defendants had access to the PELEG Products displaying and/or embodying Plaintiff's registered copyrights before Defendants created their Defendant Internet Stores.

62.    Upon information and belief, Defendants have directly copied Plaintiff's PELEG Copyrights for the PELEG Products. Alternatively, Defendants' representations of Plaintiff's

PELEG Copyrights for the PELEG Products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's PELEG Copyrights for the PELEG Products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's PELEG Copyrights for the PELEG Products. As just one example, Defendants deceive unknowing consumers by using the PELEG Copyrights without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:

*Exemplary Picture of PELEG Copyrights*



*Exemplary Infringing Products Sold on Defendant Internet Store (DOE 2)*



*Exemplary Picture of PELEG Copyrights*



*Exemplary Infringing Products Sold on Defendant Internet Store (DOE 1)*



Defendants' exploitation of Plaintiff's PELEG Copyrights for the PELEG Products in the Defendant Internet Stores constitutes infringement of Plaintiff's PELEG Copyrights for the PELEG Products.

63.     On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's PELEG Copyrights. Each Defendant

willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of Counterfeit and Infringing Products.

64.     Each Defendant either knew, or should have reasonably known, that Plaintiff's PELEG Products were protected by copyright and their representations infringed on Plaintiff's PELEG Copyrights. Each Defendant continues to infringe upon Plaintiff's rights in and to the copyrighted work.

65.     As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

66.     In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

67.     In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

68.     Plaintiff is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

69.     Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

70.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known PELEG Copyrights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.     using the PELEG Copyrights or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PELEG DESIGN product or is not authorized by Plaintiff to be sold in connection with the PELEG Copyrights;

b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine PELEG DESIGN product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the PELEG Copyrights;

c.     committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff.

d.     further infringing the PELEG Copyrights and damaging Plaintiff's goodwill;

e.     shipping, delivering, holding for sale, transferring, or otherwise moving,

storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's copyrights, including the PELEG Copyrights or any reproductions, counterfeit copies, or colorable imitations thereof;

   f. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Internet Stores, or any other domain name or Online Marketplace Account that is being used to sell or is the means by which Defendants could continue to sell Infringing Products; and

   g. operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the PELEG Copyrights or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine PELEG DESIGN Product or not authorized by Plaintiff to be sold in connection with the PELEG Copyrights.

  2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that include any reproduction, embodiment, copy or colorable imitation of the designs claimed in the PELEG Patent;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine PELEG DESIGN Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by

Plaintiff for sale under the PELEG Patent;

       c.     further infringing the PELEG Patent and damaging Plaintiff's goodwill;

       d.     aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the PELEG Patent;

       e.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which infringe the PELEG Patent; and

       f.     operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing the PELEG Patent.

3.     Entry of an Order that Walmart and any other online marketplace account provider:

       a.     disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit and Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

       b.     disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

       c.     take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

4.     That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

5.      That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of the PELEG Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

6.      That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of Plaintiff's PELEG Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

7.      In the alternative, that Plaintiff be awarded statutory damages of not less than $750 and not more than $30,000 for each and every infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement; and that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of Plaintiff's PELEG Patent, pursuant to 35 U.S.C. § 289;

8.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and

9.      Award any and all other relief that this Court deems just and proper.

Dated: May 20, 2024                          Respectfully submitted,

                                             */s/ Alisha Moriceau*
                                             Alisha Moriceau (FL Bar No. 1011395)
                                             BOIES SCHILLER FLEXNER LLP
                                             401 E Las Olas Blvd., Suite 1200
                                             Fort Lauderdale, Florida 33301
                                             Tel: (954) 356-0011
                                             amoriceau@bsfllp.com

                                             *Counsel for Plaintiff Peleg Design Ltd.*